UNITED STATES DISTRICT COURT           SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Casey Michael Rhynes, § | |
|    Petitioner, § | |
| § | |
| v. § | |
| § | Civil Action H-20-751 |
| Bobby Lumpkin, § | |
| Director, Texas Department of § | |
| Criminal Justice, Correctional § | |
| Institutions Division, § | |
|    Respondent. § | |

# Report and Recommendation

    Casey Michael Rhynes is serving fifty years in prison for aggravated assault against a public servant, aggravated assault with a deadly weapon, and evading arrest or detention with a motor vehicle. Rhynes filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Bobby Lumpkin has moved for summary judgment. (D.E. 15.) In response, Rhynes has moved to dismiss the motion for summary judgment (D.E. 17, 18), moved for an extension of time to introduce exhibits (D.E. 16), and moved for a reduction in his sentence (D.E. 23). The court recommends that Lumpkin's motion for summary judgment be granted, that Rhynes's motion for a reduction in his sentence be denied, and that Rhynes's petition be denied with prejudice. Rhynes's other motions (D.E. 16, 17, 18) are denied.

1. *Facts and Proceedings in State Court*

    On May 24, 2015, Casey Michael Rhynes, an escapee from an Oklahoma prison, engaged in a high-speed pursuit with Texas State Troopers on several major highways around Montgomery County. (D.E. 14-16 at 61–64.) Before he was taken into custody, Rhynes struck one patrol car and two other motorists while attempting to evade police. *Id.* at 63–64. On July 28, 2015, a Texas grand jury

indicted Rhynes for one count of aggravated assault against a public servant, four counts of aggravated assault with a deadly weapon, and one count of evading arrest or detention with a motor vehicle. (D.E. 14-9 at 18.)

Before trial was scheduled, three different psychiatrists conducted competency evaluations to determine whether Rhynes was competent to stand trial. (D.E. 14-16 at 95–103, 104–11, 112–25.) In his February 24, 2016 evaluation, Dr. Roger Saunders opined that Rhynes was incompetent to stand trial. *Id.* at 112–16. Subsequent interviews and additional data caused Dr. Saunders to later opine that Rhynes was competent to stand trial. *Id.* at 117–25. In his January 5, 2017 evaluation, Dr. Ronald Massey opined that Rhynes was not competent to stand trial based on his reported delusions. *Id.* at 95–103. However, Dr. Massey also noted that Rhynes's malingering played a significant role in his opinion. *Id.* at 102. A third psychiatrist, Dr. Wendy Elliott, conducted formal psychological testing to assess the role of malingering in Rhynes's mental health symptoms. *Id.* at 109–10. Dr. Elliott determined that there was no evidence that Rhynes was incompetent to stand trial and that he "was feigning his mental health symptoms and legal knowledge deficits." *Id.* at 110.

### A. Guilty Plea

On June 29, 2017, Rhynes pleaded guilty to four charges in open court: one count of aggravated assault against a public servant, two counts of aggravated assault with a deadly weapon, and one count of evading arrest or detention with a motor vehicle. (D.E. 14-14 at 13.) The court informed Rhynes that the punishment for each offense was fifteen to ninety-nine years in confinement. *Id.* at 6–7. Rhynes told the court that he read the plea paperwork, discussed it with his attorney, and understood his plea. *Id.* at 8. He testified that no one forced him to enter a guilty plea. *Id.* at 13. Following the plea proceeding, the court granted the State's motion to dismiss the two remaining aggravated assault charges. *Id.* at 17.

A second hearing was held one month later because the State had informed the court that Rhynes's original admonitions included the incorrect punishment range. (D.E. 14-14 at 18.) The minimum sentence for each offense was twenty-five years, not fifteen. *Id.* The court granted a recess so Rhynes could discuss the corrected admonitions with defense counsel. *Id.* at 20–21. Following this discussion, Rhynes again pleaded guilty to all four counts. *Id.* at 32. Rhynes also pleaded true to the fifteen prior offenses that were used as enhancements. *Id.* at 34. Attached to the charge of evading arrest was an allegation that Rhynes used the vehicle he was driving as a deadly weapon. *Id.* at 35. As to this allegation, Rhynes testified: "I will plead guilty, although, I was not using it as a weapon." *Id.*

### B. Punishment phase of trial

At the punishment hearing on October 27, 2017, Rhynes again testified that he pleaded true to the enhancement paragraphs and the deadly weapon allegation. (D.E. 14-14 at 41.) The court heard the testimony of two officers and two civilians who were at the scene, one probation officer, an investigator, and the prison warden from the Oklahoma facility where Rhynes was previously confined. *Id.* at 51–168. Along with this testimony, the court considered photographs, videos, audio of jail calls, and the competency evaluations. (D.E. 14-15, 14-16.) The court sentenced Rhynes to fifty years confinement for each count, with sentences to run concurrently. (D.E. 14-14 at 183.)

### C. Post-Trial Proceedings

Rhynes appealed the trial court's judgment. (D.E. 14-9 at 102–103.) Appellate counsel filed an *Anders* brief. (D.E. 14-6.) The Court of Appeals for the Ninth District of Texas found the appeal to be wholly frivolous and affirmed the judgment. (D.E. 14-2.) Rhynes did not file a petition for discretionary review.

Rhynes filed a state petition for a writ of habeas corpus. (D.E. 14-18 at 9–29.) The state trial court issued findings of fact and

3

conclusions of law. *Id.* at 85–89. The Texas Court of Criminal Appeals denied the state habeas petition on the findings of the trial court and on the Court's independent review of the record. (D.E. 14-17.)

Rhynes filed his federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on February 18, 2020. (D.E. 1.) He argues that his guilty plea was involuntary and that his defense counsel was ineffective because he:

- Failed to advise Rhynes on the consequences of pleading true to the deadly weapon allegation attached to the charge of evading arrest;
- Failed to call Dr. Ronald Massey, the author of the January 5, 2017 competency evaluation, as a witness at the punishment hearing;
- Failed to advance a defense that the collisions Rhynes caused were unintentional; and
- Exhibited a conflict of interest based on his unsuccessful application for the governor-appointed position of district attorney in a neighboring county.

Lumpkin moves for summary judgment, arguing that Rhynes failed to establish that the state habeas court's rejection of his complaints was unreasonable. (D.E. 15.) In response, Rhynes moves to supplement the record with exhibits (D.E. 16) and to dismiss Lumpkin's motion (D.E. 17, 18). He also asks the court to reduce his sentence. (D.E. 23.)

2. *Standard of Review for § 2254 Cases*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

4

claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,]" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (quoting *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1997)). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

3. *Voluntariness of guilty plea*

   A. *Legal Standard*

A defendant must have a full understanding of the risks involved so that they may "make an intelligent choice of whether to accept a plea or take [their] chances in court." *Anaya v. Lumpkin*, 976 F.3d 545, 532 (5th Cir. 2020) (quoting *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)). "The critical issue in determining whether a plea was voluntary and intelligent is 'whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect.'" *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982).

5

*B. Analysis*

Rhynes claims that his trial attorney failed to explain the consequences of pleading true to the deadly weapon allegation that accompanied the charge of evading arrest or detention with a motor vehicle. He argues that defense counsel's conduct constituted coercion and that his guilty plea was thus involuntary.

The state habeas court found that Rhynes's attorney "discussed with the applicant the ramifications of pleading true to the deadly weapon allegation, including how such a finding would affect the applicant's parole eligibility." (D.E. 14-18 at 86 ¶ 8.) The court determined that Rhynes's guilty plea was voluntary. *Id.* ¶ 9.

Rhynes has not shown that the state habeas court's determination was an unreasonable determination of the facts. A review of the record shows that Rhynes pleaded true to the allegation in open court. (D.E. 14-14 at 13.) He also signed a waiver agreeing that he understood the trial court's admonitions and the consequences of his plea. (D.E. 14-12 at 85–87.) Over two months later, Rhynes again testified that he had entered a plea of true to the deadly weapon allegation. (D.E. 14-14 at 44.) Rhynes's attorney declared that he discussed the deadly weapon finding with Rhynes "many times." (D.E. 14-18 at 47.) Counsel explained how the allegation would enhance Rhynes's sentence and went over different strategies they could take in handling the allegation. *Id.* The trial court transcript and defense counsel's affidavit both support the state habeas court's findings.[1]

---

[1] Employing an extremely liberal construction to Rhynes's petition, he appears to also be saying that his defense counsel was ineffective for failing to advise him about the consequences of pleading true to the deadly weapon allegation. He presents no facts to support this claim, and the record clearly rebuts it.

6

Moreover, Rhynes's conclusory allegations are not enough to show that the state habeas court's determination was an unreasonable finding of fact. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977)). Transcripts show that the court explicitly informed Rhynes of the maximum prison term and fine for the offenses. (D.E. 14-14 at 31–32.) Nothing in the record indicates that Rhynes's guilty plea was involuntary. Rhynes has not presented evidence to overcome the presumption that the state habeas court's determination was legally and factually reasonable.

4. *Ineffective assistance of counsel*

   A. *Legal standard*

Ineffective assistance of counsel claims are reviewed to determine whether counsel's performance was both objectively deficient and actually prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993). If the petitioner makes an insufficient showing on one of the components of the inquiry, the court need not address the other. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

7

### i. *Deficient Performance*

Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"Defense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Mejia*, 906 F.3d at 316 (*Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)). "A court reviewing those choices is required 'not simply to give [counsel] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons [he] may have had for proceeding as [he] did.'" *Id.* (alternations in original) (citation omitted). The Fifth Circuit has "explained that counsel is afforded particular leeway where a potential strategy carries 'double-edged' consequences.'" *Id.* "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).

### ii. *Prejudice*

Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The likelihood of a different result must be substantial, not just

8

conceivable." *Harrington*, 562 U.S. at 112. A court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

### B. Analysis

#### i. Failure to call Dr. Ronald Massey as a witness

Rhynes argues that his trial counsel was deficient because he failed to call Dr. Massey as a witness. According to Rhynes, Dr. Massey was in court "all day and willing to testify as to [his] temporary state of insanity at [the] time of [the] crime due to being off [his] meds." (D.E. 1 at 6.)

The state habeas court determined that Dr. Massey, Rhynes, and defense counsel "agreed not to call Dr. Massey to testify during the sentencing hearing because Dr. Massey would not have provided testimony that was beneficial to the defense." (D.E. 14-18 at 87 ¶ 15.) It also found that Rhynes "undermined his own mitigation evidence regarding his mental health problems when he admitted during a phone call to his mother that he would fake mental health symptoms." *Id.* ¶ 14.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (quoting *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006)).

Outside of Rhynes's unsupported assertions, nothing in the record supports finding that Dr. Massey would have testified that Rhynes was incompetent at the time he committed the charged

offenses. Nor has Rhynes shown that the decision not to call Dr. Massey as a witness was clearly inept.

In his January 5, 2017 evaluation, Dr. Massey determined that Rhynes was incompetent to stand trial due to his "delusional system." (D.E. 14-16 at 102.) He opined that "malingering [was] a significant part of the delusional system; however, clinically, whether the malingering [was] the larger or smaller contributor would [have been] speculative." *Id.* At the sentencing hearing, an investigator testified that, while in jail awaiting trial, Rhynes called his mother and told her "that she needs to make sure she tells the Court he does not understand the court system." (D.E. 14-14 at 165.) A recording of this phone call, which took place the day before Dr. Massey's initial interview with Rhynes, was played in open court. *Id.* at 164. According to defense counsel, "[t]he recorded statement was very damaging and devastating to [Rhynes's] defense of being incompetent." (D.E. 14-18 at 49.) Defense counsel declared:

> When the recorded phone call was played recording my client admitting to faking his incompetence in court this recorded statement devastated Dr. Massey's conclusion that he was incompeten[t]. Dr. Massey nor I or the defendant, wanted him to testify with the recording in the record that Rhynes lied to him the entire interview.

*Id.* at 50.

In light of the evidence that Rhynes feigned the severity of his symptoms, Rhynes has not shown that defense counsel was ineffective for not calling Dr. Massey to the stand. His choice appears to have been reasonable strategy under the circumstances. *See, e.g., Knowles*, 556 U.S. at 123–25 (determining that counsel's decision to forego an initial trial strategy of pleading insanity was not unreasonable based on weaknesses in the strategy that came to light as the case progressed).

## ii. *Failure to present a defense*

Rhynes argues that his defense counsel failed to present a defense that the collisions Rhynes caused were unintentional. Rhynes asserts that he had a letter he wanted to read to the court in his own defense but that his lawyer would not let him take the stand to read it.

The state habeas court determined that Rhynes "knowingly and voluntarily waived any factual defense to the charged offenses." (D.E. 14-18 at 86 ¶ 12.)

Rhynes signed judicial confessions that he committed the offenses as described in the indictment. (D.E. 14-9 at 86; D.E. 14-10 at 86; D.E. 14-11 at 86; D.E. 14-12 at 86.) According to the indictment, Rhynes "intentionally or knowingly threaten[ed] imminent bodily injury . . . during the commission of the assault[s.]" (D.E. 14-9 at 18.) The judicial confessions establish that Rhynes committed the offenses as described. *See United States v. Conde-Castaneda*, 753 F.3d 172, 178 (5th Cir. 2014) (concluding that defendants plead guilty to the full text of the offense described in the judicial confession, not just part of the described offense). Rhynes therefore confessed to acting intentionally when he pleaded guilty. Putting on a defense that contradicted with the factual basis of his guilty plea may have undermined Rhynes's attempt to mitigate his sentence. Rhynes has not shown that remaining silent was not sound strategy.

Additionally, nothing in the record shows that defense counsel prevented Rhynes from taking the stand. Defense counsel declared that Rhynes decided not to testify because he did not want the prosecutor to cross-examine him. (D.E. 14-18 at 48.) A decision that the defendant not testify does not constitute ineffective assistance where the defendant knew of his right and chose not to exercise it. *United States v. Mullins*, 315 F.3d 449, 453–54 (5th Cir. 2002). Rhynes has not shown that the state trial court's determination was unreasonable.

11

### iii.  *Defense counsel's alleged conflict of interest*

Rhynes asserts that on the day of the hearing, defense counsel found out that he was not chosen for a coveted appointment in the district attorney's office. Rhynes argues that this loss constituted a conflict of interest. He alleges that defense counsel was initially trying to appease the prosecution and then was too distracted to mount a proper defense.

The state habeas court found "no indication that [defense counsel's] application for consideration as the Grimes County District Attorney had any effect on his representation of" Rhynes. (D.E. 14-18 at 86 ¶ 11.) The state habeas court determined that "no actual conflict of interest existed." *Id.* ¶ 10.

"As a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties." *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008). "The mere possibility of a conflict, absent a showing that the attorney actively represented conflicting interests, is not sufficient." *United States v. Villarreal*, 324 F.3d 319, 327 (5th Cir. 2003). An actual conflict of interest forces counsel to choose between their own self-interest and their duty to their client. *Beets v. Scott*, 65 F.3d 1258, 1277 (5th Cir. 1995).

Rhynes's conclusory allegations do not establish that the state habeas court's determination was an unreasonable determination of the facts or the law. The trial transcripts show that defense counsel actively participated in the sentencing hearing. He cross-examined witnesses and presented the court with the psychological evaluations as mitigating evidence. (D.E. 14-16 at 95–125.) Defense counsel declared that he applied for a position with the neighboring county's district attorney's office and that the process did not interfere with his defense in criminal cases. (D.E. 14-18 at 48.) Nothing in the record supports a conclusion that defense counsel made an active decision to forego his duty to Rhynes in favor of his own self-interests. The fact of

an unsuccessful candidacy for a position with the prosecutor's office does not give rise to a conflict of interest as a matter of law. *United States v. Horton*, 845 F.2d 1414, 1420 (7th Cir. 1988) ("In any event, a candidate for a high federal position in his professional field would not advance his own interests by demonstrating that he is a weak or unskilled attorney on behalf of his client's interests.").

Rhynes has not established that defense counsel's conduct was deficient under *Strickland*. He has not presented any evidence to overcome the presumption that the state habeas court's conclusion was correct.

*5. Rhynes's motions in response to the motion for summary judgment*

Rhynes moves for additional time to introduce exhibits (D.E. 16), moves to dismiss the motion for summary judgment (D.E. 17, 18), and moves for a reduction in his sentence (D.E. 23). In the motion for additional time, Rhynes explains that he wants until July 3, 2020, to file additional documentation. (D.E. 16.) Rhynes did not file exhibits or say what exhibits he wanted to file. Rhynes submitted additional motions and briefings after he filed his motion, which the court has considered. The motion (D.E. 16) is denied.

In the motions to dismiss Respondent's motion for summary judgment, Rhynes argues Respondent's motion is invalid because it misstates the name of the presiding judge in state court. (D.E. 17, 18.) He also reiterates some of the claims made in his federal petition. The court has considered Rhynes's arguments in making this recommendation but finds no basis to dismiss Respondent's motion for summary judgment. These motions (D.E. 17, 18) are denied.

In the motion for a reduction in his sentence, Rhynes asks this court to reduce his sentence from fifty years to five, with credit for the five years he has already served. (D.E. 23.) Effectively he moves for release. (D.E. 13.) For the reasons detailed in the May 28, 2020 order

and for the reasons stated above, the court recommends that Rhynes's motion for reconsideration (D.E. 23) be denied.

### 6. Conclusion

The court recommends that Lumpkin's motion (D.E. 15) be granted, that Rhynes's petition be denied with prejudice, and that Rhynes's motion for reconsideration (23) be denied. Rhynes has not met his threshold burden of demonstrating that the state habeas court's denial of his claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Rhynes has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, the undersigned recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this report and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on January 19, 2021.

_____
Peter Bray
United States Magistrate Judge